CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
3/25/2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| HOUSTON CASUALTY COMPANY, | § |
| | § |
| Plaintiff, | § |
| | § CIVIL ACTION NO. 3:24cv00017 |
| v. | § |
| | § |
| CFA INSTITUTE, | § |
| | § |
| Defendant. | § |

**COMPLAINT**

Plaintiff Houston Casualty Company ("HCC") files this Complaint for Declaratory Judgment ("Complaint") against Defendant CFA Institute ("CFA") and alleges as follows:

**INTRODUCTION**

1. This insurance coverage dispute concerns the parties' rights and obligations under an event cancellation policy, Policy No. 19/7002979 (the "Policy"),[1] issued by HCC to CFA. HCC has already paid CFA for covered losses under the Policy in excess of $14 million. CFA disputes the amount of covered losses and seeks payment of the full $75 million limit of indemnity. However, the Policy does not entitle CFA to indemnity for certain of the purported "losses" CFA seeks to recover in excess of the sum HCC has already paid.

2. CFA is not entitled to recover from HCC amounts in excess of those already paid by HCC based on the plain language of the Policy. CFA administers exams to investment management professionals and scheduled the CFA Program Exam to occur at locations throughout the world in June 2020. However, CFA postponed its June 2020 CFA Program Exams due to the COVID-19 global pandemic and sought coverage under the HCC Policy as a result of this postponement.

---

[1] The Policy is attached as Exhibit A.

- 1 -

3.     CFA seeks to recover millions of dollars as "loss" under the Policy for exam registration fees that CFA received from registrants before the June 2020 exam and *never returned* after the exam was postponed. Thus, CFA seeks to recover as "loss" registration fees CFA received and kept and *never actually lost*. These retained funds cannot be considered as "loss" under the Policy or, really, by any definition of "loss" found anywhere. Simply put, money you keep is not money you "lose."

4.     CFA also cannot recover by suit additional amounts from HCC over and above the amounts HCC has already paid because CFA failed to comply with a condition precedent under the Policy.  The Policy requires that any action on the Policy for the recovery of any claim must be commenced within twelve months after the loss occurs.  CFA did not commence suit within twelve months after the loss occurred. CFA is barred from recovering under the Policy because it failed to comply with this condition precedent.

5.     In this action, HCC seeks a declaration: (1) that the June 2020 CFA Program Exams were deferred; (2) that exam registration fees that CFA retained and did not return to candidates do not constitute a "loss" under the Policy and also that only revenue returned to candidates who did not take an exam within 13 months after June 2020 CFA Program Exams is considered lost gross revenue; and (3) that CFA is barred from recovering under the Policy through bringing suit because CFA failed to comply with a condition precedent to file suit within twelve months after the loss occurred.

## THE PARTIES

6.     Plaintiff Houston Casualty Company is a corporation organized and existing under the laws of Texas, with its principal place of business in Texas.

7.  Defendant CFA Institute is incorporated in Virginia, with its principal place of business in Charlottesville, Virginia.

## JURISDICTION AND VENUE

8.  This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a) and 2201 because HCC is neither incorporated in nor has its principal place of business in the same state as CFA, and HCC seeks a declaratory judgment determining the parties' respective rights and obligations with regards to an amount in controversy exceeding $75,000.

9.  Venue is proper under 28 U.S.C. § 1391 and Local Civil Rule 2(b) because CFA is headquartered in Charlottesville, Virginia and because the insurance contract at the center of the parties' dispute was delivered to CFA in Charlottesville, Virginia, within the Western District of Virginia, Charlottesville Division.

## FACTUAL ALLEGATIONS

**I.   CFA Obtained Event Cancellation Insurance**

10.  CFA operates as a non-profit professional association with a mission to lead the investment profession globally. CFA administers formal testing of candidates seeking to obtain a Chartered Financial Analyst (CFA®) charter, which is a designation given to those who have completed the CFA Program® and work experience requirements. The testing includes a three-part examination related to investment tools, valuing assets, portfolio management, and wealth planning. Test takers pay a registration fee to CFA.

11.  CFA intended to administer the CFA Program Exams globally in June 2020. The June 2020 testing was scheduled to include exams for Levels I, II, and III.  CFA was responsible for: (1) securing venues, administrators, and vendors; (2) marketing the exam; and (3) organizing the scheduling.

## II. The COVID-19 Pandemic Triggered Postponement of Exams

12. Due to the COVID-19 pandemic, CFA postponed the June 2020 CFA Program Exams globally. On March 19, 2020, CFA announced on its website:

> CFA Institute, the global association of investment management professionals, announces that due to the global public health crisis caused by the Novel Coronavirus (COVID-19) outbreak, the organization has made the unprecedented decision to postpone the June 2020 CFA Program Exam administrations globally.
>
> * * *
>
> Candidates registered for the June exams will be transferred to one of the next two exam administrations. CFA Institute is currently working with its partners around the globe to define precisely when those next two administrations will occur; however, the soonest opportunity will be December 2020 for all levels. Candidates will be allowed to select a preferred future date.
>
>  * * *

## III. The Policy

### A. Insuring Agreements

13. Section I.A of the Policy provides:

> **COVERAGE A. EVENT CANCELLATION**
>
> We will indemnify you, up to the combined Limit of Insurance for Coverage A, B, and C, for your loss as a direct result of **cancellation, abandonment, curtailment, postponement,** or **relocation** of the **insured event** to which this insurance applies.

14. Under the Policy, "**Cancellation** means your inability to commence the **insured event** at the regularly scheduled date and time of commencement of the **insured event**" and "**Postponement** means the unavoidable deferment of the insured event to another time."

15. **Insured Event** means the events covered by the Policy as shown in the Schedule of Events, and the June 2020 CFA Program Exams are listed in the Schedule of Insured Events.

### B. Calculation of Loss

16. Section I.C. of the Policy, **Calculation of Loss**, provides as follows:

> **WITH RESPECT TO COVERAGE A**
>
> We will deduct from the amount of the adjusted loss the deductible shown in the Declarations.
>
> Subject to the limit of insurance with respect to Coverage A, we will indemnify you for:
>
> The total of **expenses** incurred plus the loss of **gross revenue** that would have been received had the **insured event** taken place as originally scheduled less **gross revenue** retained after refunds and **expenses** not incurred.

17. According to the Policy, "**Expenses** means your costs and charges in organizing, running and providing services for the **insured event**…" and **Gross Revenue** is defined as follows:

> [A]ll monies paid or payable to you from exam registration fees arising out of the **insured event**. It is understood and agreed that exam deferrals are not considered a loss of gross revenue. It is also understood and agreed that **gross revenue** does not include revenue returned to candidates that take an exam within 13 months after any loss occurs. As such, we reserve the right to withhold any claim payment until all information involving exam candidates and subsequent exam dates can be evaluated.

18. The Policy provides a $75,000,000 maximum combined indemnity limit for Coverages A, B, and C with a $1,000,000 deductible.

### C. Conditions Precedent

19. Section VI, Condition 14. **Suit Against the Company**, states as follows:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law unless you have complied with all the provisions of this policy and unless commenced suit within twelve months after the loss occurs.

## IV. CFA's Claim and Request for Policy Limits

20. As a result of the global postponement of the June 2020 CFA Program Exams, CFA filed a notice of claim under the Policy.

21. HCC has already paid $14,082,584[2] to CFA for its covered losses.

22. CFA disagrees with HCC's calculation of loss and has asserted that it is entitled to the $75,000,000 limits of indemnity with respect to the postponed June 2020 CFA Program Exams.

23. According to the definition of **gross revenue**: (1) exam deferrals are not considered a loss of gross revenue; and (2) gross revenue does not include revenue returned to candidates that take an exam within 13 months after any loss occurs.

24. CFA claims: (1) the June 2020 CFA exams were not deferred, they were cancelled; and (2) revenue from candidates who took the exam more than 13 months after June 2020 should be treated as lost gross revenue regardless of whether CFA refunded those candidates. Thus, CFA seeks to recover the exam registration fees it retained and never refunded to exam registrants.

25. HCC disagrees and maintains: (1) the June 2020 CFA exams were deferred and thus, the revenue from these exams is not a loss of gross revenue under the plain terms of the Policy; and (2) that exam registration fees that CFA retained and did not return to candidates do not constitute a "loss" under the Policy.

26. CFA has not filed suit against HCC for the recovery of additional amounts under the Policy.

## CAUSES OF ACTION

27. HCC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

28. HCC and CFA are interested parties under the Policy. An actual case or controversy exists between the parties, under the circumstances set forth above, over the amount of indemnity CFA

---

[2] A net loss of $15,082,584 minus a $1,000,000 deductible.

is entitled to recover under the Policy as a result of the postponement of the June 2020 CFA Program Exams.

29. Accordingly, pursuant to 28 U.S.C. § 2201, *et seq.*, HCC respectfully requests that this Court issue the following judicial declarations to terminate the uncertainty or controversy giving rise to this proceeding.

**COUNT I: THE JUNE 2020 CFA PROGRAM EXAMS WERE DEFERRED.**

30. HCC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

31. The Policy provides that "exam deferrals are not considered a loss of gross revenue." On March 19, 2020, CFA expressly announced its "decision to postpone the June 2020 CFA Program Exam." "**Postponement** means the unavoidable deferment" of the June 2020 CFA exams.

32. HCC is entitled to a declaration that the June 2020 CFA Program Exams were deferred.

33. There is no adequate remedy, other than that required herein, by which the controversy may be resolved.

**COUNT II: EXAM REGISTRATION FEES THAT CFA RETAINED AND DID NOT RETURN TO CANDIDATES DO NOT CONSTITUTE A "LOSS" UNDER THE POLICY.**

34. HCC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

35. CFA seeks to recover millions of dollars as "loss" under the Policy for registration fees that CFA received from exam registrants before the June 2020 CFA Program Exams and that CFA never returned after the exam was postponed.

36. These retained funds cannot be considered a "loss" under the Policy.

37. HCC is entitled to a declaration that exam registration fees that CFA retained and did not return to candidates do not constitute a "loss" under the Policy. In addition, HCC is entitled to a

declaration that only revenue returned to candidates who did not take an exam within 13 months after the June 2020 CFA Program Exams is considered lost gross revenue.

38. There is no adequate remedy, other than that required herein, by which the controversy may be resolved.

**COUNT III: CFA FAILED TO COMPLY WITH A CONDITION PRECEDENT.**

39. HCC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

40. The Policy provides that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law…unless commenced suit within twelve months after the loss occurs."

41. The loss occurred in June 2020 when CFA postponed its June 2020 CFA Program Exams due to the COVID-19 global pandemic.

42. CFA has not filed suit against HCC to recover additional amounts under the Policy.

43. HCC is entitled to a declaration that CFA is barred from recovering under the Policy because it failed to comply with a condition precedent to file suit within twelve months after the loss occurs.

44. There is no adequate remedy, other than that required herein, by which the controversy may be resolved.

**PRAYER**

WHEREFORE, HCC respectfully requests that the Court enter a judgment:

1) declaring:

   a) that the June 2020 CFA Program Exams were deferred;

- 9 -

    b)   that exam registration fees that CFA retained and did not return to candidates do not constitute a "loss" under the Policy and additionally that only revenue returned to candidates who did not take an exam within 13 months after June 2020 CFA Program Exams is considered lost gross revenue; and

    c)   that CFA is barred from recovering under the Policy because it failed to comply with a condition precedent to file suit within twelve months after the loss occurs.

2)  awarding HCC its attorneys' fees and costs to the extent allowed by law; and

3)  awarding all other and further relief as the Court deems just and proper.

Dated: March 25, 2024

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

<u>/ s/ Thomas A. Coulter</u>
    Thomas A. Coulter
    Bar No. 46532
    Tom.coulter@nortonrosefulbright.com
799 9th Street NW
Suite 1000
Washington, DC  20001
Telephone: (202) 662-4765
Facsimile: (202) 662-4643

<u>/ s/ Daniel McNeel Lane, Jr.</u>
    Daniel McNeel Lane, Jr.
    (*seeking admission pro hac vice*)
    neel.lane@nortonrosefulbright.com
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, Texas  78205
Telephone: (210) 387-4040
Facsimile: (210) 270-7170

<u>/ s/ Michelle Sloan</u>
    Michelle Sloan
    (*seeking admission pro hac vice*)
    michelle.sloan@nortonrosefulbright.com
1301 McKinney St., Suite 5100
Houston, Texas  77010-3095
Telephone: (713) 651-5402
Facsimile: (713) 651-5246

**Counsel for Houston Casualty Company**

## **CERTIFICATE OF SERVICE**

      In compliance with Rule 5 of the Federal Rules of Civil Procedure this pleading was served upon all counsel of record on March 25, 2024.

                                    */s/ Thomas A. Coulter.*
                                        Thomas A. Coulter